# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBERT L. MACKEY,

      Petitioner,

:      Case No. 3:12-cv-073

:      District Judge Thomas M. Rose
      Magistrate Judge Michael R. Merz

  -vs-

MICHAEL SHEETS, Warden,

:

      Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 19) to the Magistrate Judge's September 6, 2012, Report and Recommendations, recommending that the Petition in this case be found to be a "second or successive" petition and transferred to the Sixth Circuit Court of Appeals for permission to proceed (the "Report," Doc. No. 17). The Warden has filed a Response to the Objections (Doc. No. 21) and Judge Rose has recommitted the matter for reconsideration in light of the Objections (Recommittal Order, Doc. No. 20).

Petitioner raises three objections which will be considered *seriatim*.

### Objection No. 1: Applicable State Law

In his first objection, Mackey asserts the Report "erroneously conflates the role of a federal court to decide matters of state law in a diversity of citizenship case with the role of a federal habeas court to declare a state court decision invalid or void." (Doc. No. 19, PageID

1

1273). Mackey contends instead that a federal court's consideration of state law issues in a habeas case under 28 U.S.C. § 2254 is different from when the same federal court is deciding a state law claim in a case where jurisdiction is based on diversity of citizenship. The Magistrate Judge disagrees.

Mackey was convicted in 1997. He filed his first habeas petition attacking that judgment in this Court on July 7, 2009 (Case No. 3:09-cv-255). While that case was pending, he filed a motion for resentencing in the Clark County Common Pleas Court on October 14, 2010 (Motion to Vacate Judgment, Ex. 18 to Return of Writ, Doc. No. 11, PageID 470, et seq.). He noted that his initial judgment of conviction did not include any term of post-release control (which was mandatory for the crimes of which he was convicted) and that "the resulting sentence is a 'nullity;' it is utterly void and <u>does not legally exist</u>." *Id.* at PageID 473 (emphasis sic), citing *State v. Singleton*, 124 Ohio St. 3d 173 (2009); *State v. Bezak*, 114 Ohio St. 3d 94 (2007); *State v. Boswell*, 121 Ohio St. 3d 575; and *State v. Simpkins*, 117 Ohio St. 3d 420 (2008). As a remedy, Mackey sought a complete resentencing, relying on the following language from *Bezak*: "The effect of determining that a judgment is void is well established. It is as though the proceedings had never occurred: the judgment is a mere nullity and the parties are in the same position as if there had been no judgment." *Id.* at 474, quoting *Bezak,* 114 Ohio St. 3d at 96. As relief, Mackey asked the Common Pleas Court to "vacate its September 28, 1998 judgment as void, grant him a *de novo* sentencing hearing, and thereafter enter a final appealable order of conviction and sentence." *Id.* at 482.

The State of Ohio did not oppose the Motion to Vacate and conceded on October 29, 2010, that a *de novo* resentencing hearing was proper. (Response, Ex. 19 to Return of Writ, PageID 489-491.) Mackey then made an extended argument for a reduced sentence (Sentencing

Memorandum, Ex. 20 to Return of Writ).

On February 8, 2011, Judge O'Neill entered a Judgment Entry of Conviction in Clark County Case No. 97-CR-318 which imposed the required term of post-release control and also provided that the twenty-eight year sentence would run concurrently with the ten-year sentence in Case No. 97-CR-40, effectively reducing Mackey's aggregate sentence by ten years. (Judgment, Ex. 23 to Return of Writ, PageID 519-520). Although there was now a "final appealable order" as Mackey requested, neither party appealed.

After Mackey filed his Motion to Vacate but before Judge O'Neill decided it, the Ohio Supreme Court on December 23, 2010, decided *State v. Fischer*, 128 Ohio St. 92 (2012). In *Fischer* the Ohio Supreme Court modified the holding in *Bezak*: "Therefore, we hold that the new sentencing hearing to which an offender is entitled under *Bezak* is limited to proper imposition of post-release control." *Id.* at 99. Thus after *Fischer* an Ohio defendant whose judgment of conviction did not contain the required post-release control language was entitled to have that portion of the judgment corrected, but was not entitled to a *de novo* sentencing hearing.

Despite *Fischer*, Judge O'Neill gave Mackey what he had been entitled to under *Bezak* – a *de novo* sentencing hearing. On February 11, 2011, three days after Judge O'Neill acted, Judge Rice dismissed Mackey's first habeas petition with prejudice (Case No. 3:09-cv-255, Doc. No. 25). Mackey moved to alter the judgment in that case based on his new judgment from Judge O'Neill. *Id.* at Doc. No. 27. Judge Rice denied that motion in part on the basis that the "Clark County Common Pleas Court exceeded the jurisdiction bestowed upon it by the Ohio Supreme Court in *Fischer*, by, in effect, reducing the Petitioner's sentence . . . ." *Id.* at Doc. No. 33, PageID 529.

The Warden presses the same argument here: the Clark County Common Pleas Court

3

"was without jurisdiction to address anything other than postrelease control." (Return of Writ, Doc. No. 11, PageID 325, citing *Fischer*.) Mackey does not respond directly to this argument. However, in opposition to the Warden's statute of limitations defense, he argues:

> Suddenly, with the stroke of a pen, Mr. Mackey's 1998 judgment of conviction and sentence did exist and was not wholly void. The *Fischer* Court also overruled *Bezak's* holding that a de novo sentencing hearing was required where post-release control was not properly imposed. *Id*., paragraph 2 of the syllabus. *Fischer* decided that trial courts should instead hold limited resentencing hearings to correct the post-release control errors. *Id*. It further held that "a sentence that does not include the statutorily mandated term of post-release control is void, is not precluded from appellate review by principles of res judicata, and <u>may be reviewed at any time, on direct appeal or be collateral attack</u>." *Id*., paragraph 1 of the syllabus (emphasis added). Finally, the Fischer Court held that "[t]he scope of an appeal from a resentencing hearing in which a mandatory term of postrelease control is imposed is limited to issues arising at the sentencing hearing." *Id*., paragraph 4 of the syllabus.
>
> Thus, Mr. Mackey's 1998 judgment transformed, on December 23, 2010, from being a totally void nullity which did not constitute a final appealable order, to a partially void order which was directly appealable at any time.

(Reply, Doc. No. 16, PageID 1196-1197, emphasis in original.) Thus Mackey fully acknowledges that the law he relied on in seeking a *de novo* sentencing – *Bezak* – was overruled by *Fischer*. Nonetheless, Judge O'Neill acted as if *Bezak* were still the law and modified a portion of Mackey's sentence beyond the post-release control provision.

In his Judgment Entry of Conviction of February 8, 2011, Judge O'Neill did not advert to *Fischer*. When he held the resentencing hearing on February 4, 2011, he apparently was unaware of *Fischer*, because he stated on the record: "Pursuant to the Supreme Court rulings, the current law of the State of Ohio is that the Defendant at this time must be sentenced de

novo." (Transcript, Ex. 24 to Return of Writ, PageID 526). Neither the prosecutor nor defense counsel mentioned *Fischer* during that hearing and it is unknown to this Court whether either one of them was aware of *Fischer*.

Surely the question whether Judge O'Neill had authority to change anything in the 1998 judgment other than the post-release control provision is a question of Ohio law. That question of Ohio law is important to the decision this Court must make about whether the Petition here is "second or successive." If the February 8, 2011, judgment is a "new" judgment, then the Petition is arguably not second or successive under *Magwood v. Patterson*, 561 U.S. ___, 130 S. Ct. 2788, 177 L. Ed. 2d 592 (2010), which held that a second-in-time habeas petition attacking a new death sentence after a conditional writ of habeas corpus had eliminated a prior death sentence is not "second or successive." If instead it is the same judgment as the 1998 judgment, modified lawfully only as to the post-release control provision, then Petitioner is not entitled to the benefit of *Magwood.*

How is this Court to decide the relevant question of Ohio law, to wit, whether Judge O'Neill had authority on February 8, 2011, to change any portion of the 1998 judgment except the post-release control provision? In the Report, the Magistrate Judge concluded this Court must follow the Rules of Decision Act, codified at 28 U.S.C. § 1652, which provides:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

In his first objection, Mackey claims this approach improperly conflates the process this Court would use in deciding a claim based on Ohio substantive law with the federal constitutional law which must be applied in deciding habeas corpus cases. He criticizes the Report for relying on *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), as if the Rules of

5

Decision Act only applied to diversity of citizenship cases. But that is not so. Application of the Rules of Decision Act does not depend on the jurisdictional basis of the action. *Watson v. McCabe,* 527 F.2d 286, 288 (6th Cir. 1975). Indeed, federal courts are obliged to apply the constitutional, statutory, and common law of the State in which they sit whenever faced with a nonfederal question of law and must follow state courts on state law questions. *Seaboard Finance Co. v. Davis*, 276 F. Supp. 507, 513 (N.D. Ill. 1967); *United States v. Kanan*, 225 F. Supp. 711, 715 (D. C. Ariz. 1963). Decisions of courts of the State are the "laws of the several States" within the meaning of this statute in any case where state law must be discerned, not just when state law creates the cause of action. *Commissioner of Internal Revenue v. Bosch's Estate,* 387 U.S. 456, 464 (1967); *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 157 (1948).

The Report cites the Rules of Decision Act as a premise for relying on the ten Ohio appellate decisions which have held the common pleas courts are not authorized, post-*Fischer*, to modify any other part of a sentence on a remand to add post-release control provisions (Report, Doc. No. 17, PageID 1260). Mackey cites no Ohio cases to the contrary. *Id.*

Mackey argues that this "Court should not be looking to jurisprudence outside of federal habeas cases in deciding what the role of a federal district court is to declare a state court judgment invalid," (Objections, Doc. No. 19, PageID 1275, citing *Burks-Bey v. Superintendent*, No. 3:09-cv-095, 2012 U.S. Dist. LEXIS 29496 (N.D. Ind. Mar. 6, 2012)(Simon, J.). In that case a *pro se* habeas petitioner argued that *Erie Railroad* holds '[f]rom this date forward, all the Courts in the land will be convened under Negotiable Instruments Law.' Judge Simon noted that *Erie Railroad* nowhere contains such language and the petitioner's signature on his speedy trial waiver "without prejudice, U.C.C. 1-207" had no effect. The judge did say "[a] real quote from

*Erie* states that "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." *Burksy-Bey* at \*6, quoting *Erie*, 304 U.S. at 78. The judge did not hold that the principles of *Erie Railroad* have no applicability to habeas corpus cases when a question of state law must be decided. Instead, he said "Erie has no applicability to **this** federal habeas corpus case. . ." *Burks-Bey* at \*6 (emphasis added). But there was no question of state law to be decided in the *Burks-Bey* case.

The substance of Mackey's objection is that this Court has substituted its own interpretation of Ohio law for that of the Judge O'Neill (Objection, Doc. No. 19, PageID 1275, *et seq.*). He cites *Bradshaw v. Richey*, 546 U.S. 74 (2005), for the proposition that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Id.* at 76. In *Richey* the Sixth Circuit had held intent to kill could not, under Ohio law, be transferred from the intended victim to the person actually killed when the Ohio Supreme Court on direct appeal in the same case had found transferred intent was sufficient and that the doctrine was firmly rooted in Ohio law. The Supreme Court unanimously reversed in a *per curiam* opinion. *Richey* actually supports the position taken in the Report that Ohio law, when relevant to a habeas decision, must be discerned from Ohio case decisions. The Report does not propose to overrule Judge O'Neill's interpretation of Ohio law because he made no such interpretation. In fact, the record is completely silent as to whether he even knew that *Fischer* had overruled *Bezak*.

The Magistrate Judge certainly agrees with Petitioner that a federal court cannot grant habeas corpus relief upon a finding that the state courts in a particular case have violated state law. Rather, we can grant relief only when a person is confined in violation of the United States Constitution. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. \_\_\_, \_\_\_, 131 S. Ct. 13, 16; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209,

221 (1982), *Barclay v. Florida,* 463 U.S. 939, 947 (1983). But in deciding that ultimate question, we have often to decide subordinate questions of state law and in doing so we must follow state decisional law. *Erie Railroad* tells us that state court decisional law, no less than state statutes or constitutions, must be followed.

Mackey relies on *Lambert v. Blackwell*, 387 F. 3d 210 (3rd Cir. 2004), for the proposition that we should not re-examine whether Judge O'Neill properly exercised his jurisdiction. What the *Lambert* court said was

> a federal habeas court has at most a circumscribed role in reviewing whether a state court properly applied its own law when it explicitly decided to exercise jurisdiction. [24]

[24] "The United States Supreme Court has repeatedly declared that, in a federal habeas proceeding such as this, 'state courts are the ultimate expositors of state law . . . and we are bound by their constructions except in rare circumstances.'" *Humanik v. Beyer*, 871 F.2d 432, 436 (3d Cir. 1989) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975)). We reiterated this point in *Johnson v. Rosemeyer,* where we summarized our precedent as counseling that "a federal court in a habeas case must be most circumspect in re-examining state court decisions," and "only in extraordinary circumstances should a federal district court in a habeas corpus case decline to follow the opinions of a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner." 117 F.3d 104, 114-15 (3d Cir. 1997); see also *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Jurisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law."). Of course, in *Humanik*, *Barry*, *Rosemeyer*, and *Poe*, the state court determinations of state law went to the merits of the petitioners' habeas claims. Here, the Superior Court's determination of state law regards whether as a jurisdictional matter state courts could entertain Lambert's claims on collateral review.

8

Lambert, 387 F.3d at 239.

Although *Lambert* is not binding precedent here, it is consistent with the Magistrate Judge's position and that of Judge Rice in deciding Mackey's prior petition. Judge O'Neill had authority to do a *de novo* resentencing when Mackey filed for it in October, 2010. He lost that authority when the Ohio Supreme Court overruled its prior case that gave him the authority. But there is no evidence he considered *Fischer* and decided, for example, that it did not apply to motions to vacate already filed or was for some other reasons inapplicable. In contrast, every Ohio appellate court to actually consider the impact of *Fischer* has held trial courts no longer have authority to sentence *de novo* on post-release control motions (See cases cited in Report, Doc. No. 17, PageID 1260). Mackey's first objection is without merit.

**Objection No. 2: Construction of State Law**

In his second objection, Mackey argues that, even if the trial court had no authority to reduce the term of imprisonment, the change in post-release control is enough to make the February 8, 2011, judgment a "new" judgment that *Magwood, supra*, excuses from the second or successive bar.

Mackey largely argues this point by incorporating by reference his argument in the Reply (Doc. No. 16). To that extent of the incorporation, no further analysis is needed.

Mackey reasserts in his second objection his prior claim that there is no basis for a finding Judge O'Neill lacked authority to reduce the sentence, relying on *State ex rel Pruitt v. Donally*, 129 Ohio St. 3d 498 (2011), and *Manns v. Gansheimer,* 117 Ohio St. 3d 251 (2008).

His theory is that, already in *Manns*, the Ohio Supreme Court had begun to recognize that not all sentencing errors are jurisdictional. *Manns*, however, is a state habeas case and the Ohio Supreme Court has held that sentencing errors cannot be corrected in habeas because habeas is an extraordinary writ in Ohio and not available when a defendant has an adequate remedy in the ordinary course of law, i.e., by direct appeal or petition for post-conviction relief. *Manns*, 117 Ohio St. 3d at 252 ¶ 6, citing *State ex rel Sneed v. Anderson*, 114 Ohio St. 3d 11 (2007). *Pruitt* is also an extraordinary writ case. The Ohio Supreme Court affirmed a denial of mandamus and prohibition by the court of appeals upon a finding that "[e]rror in sentencing does not patently and unambiguously divest the court or its judges of jurisdiction to enter judgment." *Pruitt*, 129 Ohio St. 3d at 498-499, ¶ 2. Here again the defendant was found to have had a remedy in the ordinary course of law. *Id.* at ¶ 4. Neither of these cases discusses the impact of *Fischer* on trial court authority under *Bezak*; all ten appellate cases cited by Respondent and Judge Rice of this Court, when considering the precise question at issue, have held authority for de novo sentencing did not survive *Fischer*.

**Objection 3: Judge Rice's Alleged Error**

Judge Rice dismissed Mackey's 2009 petition on the merits as barred by the statute of limitations (Case No. 3:09-cv-255, Decision and Entry, Doc. No. 25). Mackey argues here that because Judge Rice's decision is in error, this petition is not second or successive. As Mackey rightly points out, the question whether the prior dismissal was erroneous is before the Sixth Circuit in its Case No. 11-3267 (See Order, Doc. No. 39 in prior case). If the Sixth Circuit agrees with Mackey, then he will be able to obtain a decision on the merits of his claims on

remand in the prior case or in this case. But that is precisely why this case should be transferred to the Sixth Circuit as a second or successive petition: it is second or successive until and unless Judge Rice is found to have been in error by that court. Since, in this Magistrate Judge's opinion, Judge Rice was correct in his determination of the statute of limitations question, it would be odd for this Court to premise a decision in the instant case on the hypothesis that Judge Rice was wrong. If the Sixth Circuit finds Judge Rice in error and has before it at the same time this Court's determination that this second-in-time petition is also second or successive, it will be able to deal with both Petitions at the same time. On the other hand, if this Court, contrary to its best judgment, accepts the hypothesis that Judge Rice was wrong and proceeds to adjudicate the instant Petition and the Court of Appeals then determines that Judge Rice was correct, this Court will have acted without jurisdiction. *Burton v. Stewart*, 549 U.S. 147, 149 (2007). That would be the ultimate exercise in judicial diseconomy.

Mackey is correct that *Rashad v. Laffler*, 675 F.3d 564 (6th Cir. 2012), supports his position. There the Sixth Circuit held the AEDPA statute of limitations runs from the conclusion of direct review of a judgment containing a new sentence, rather than from the time of conviction. *Id.* at 568. If the Sixth Circuit finds Mackey's February 8, 2011, sentence is a "new" sentence, it will presumably follow *Rashad* and reverse Judge Rice's conclusion that the earlier petition is barred by the statute of limitations. However, while this Court is not bound by Judge Rice's decision, it is persuaded by it, even if the Sixth Circuit eventually is not persuaded by it. That again is good reason to transfer this case to the Sixth Circuit and recommend that it be consolidated with the prior case.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again recommends this case should be transferred to the Sixth Circuit as a second or successive petition.

November 6, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).